UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRIAN J.,

           Plaintiff,            Case No. 1:22-cv-12962

v.            Honorable Thomas L. Ludington
           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,

           Honorable Patricia T. Morris
           Defendant.            United States Magistrate Judge

_____/

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS, (2) ADOPTING REPORT AND RECCOMENDATION, (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (4) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (5) DISMISSING COMPLAINT WITH PREJUDICE**

Plaintiff Brian J. was shot in his left hip on October 28, 2018. The bullet, embedded just above Plaintiff's left thigh, broke Plaintiff's hip bones and caused deep vein thrombosis in Plaintiff's left femoral artery. After several surgeries during a two-week hospital stay, Plaintiff was discharged and began his road to recovery. This road has been longer, and more painful, than Plaintiff anticipated. About one year after being shot, Plaintiff filed for disability benefits with the Social Security Administration (SSA). The SSA denied Plaintiff's petition and denied his request for reconsideration. Plaintiff then requested a hearing before an administrative law judge (ALJ), which was held virtually in November 2021 because of the COVID-19 pandemic.

After Plaintiff's hearing, and after examining the medical record in its entirety, the ALJ denied Plaintiff's disability-benefits petition. The ALJ concluded that, despite Plaintiff's severe impairment and continued complaints of pain, Plaintiff's impairment did not satisfy statutory criteria and Plaintiff could still perform thousands of "light work" jobs with the assistance of a cane.

Plaintiff filed a federal Complaint challenging the ALJ's conclusions in December 2022. Reviewing cross-motions for summary judgment, Magistrate Judge Patricia T. Morris recommended dismissing Plaintiff's Complaint, finding the ALJ's conclusion was supported by substantial evidence. Currently before this Court are Plaintiff's three objections to Judge Morris's recommendation. Two objections repeat arguments already raised and rejected, and the third objection fails on the merits. Accordingly, Plaintiff's objections will be overruled, Judge Morris's recommendation will be adopted, and Plaintiff's Complaint will be dismissed with prejudice.

I.

A. Plaintiff's Injury and Medical History

On October 28, 2018, Plaintiff Brian J.—47 years old at time time—was hospitalized following injuries from a gunshot wound to his left hip and thigh. ECF Nos. 6-3 at PageID.40.; 12 at PageID.1179. X-rays revealed Plaintiff's hip bones were fractured and bullet fragments were embedded in his left hip joint. *See id.* Plaintiff's doctors diagnosed deep vein thrombosis[1] in Plaintiff's left femoral artery. ECF No. 6-8 at PageID.310, 315, 746. After several surgeries, Plaintiff was discharged on November 12, 2018 with a walker. ECF Nos. 6-3 at PageID.40; 6-8 at PageID.435. At the time of Plaintiff's discharge, he noted some "mild pain" in his left leg but medical records "indicate[d] this was well controlled with pain medication." ECF No. 6-3 at PageID.40.

Throughout the next few months, Plaintiff visited his vascular surgeon, Dr. Brian Daly, several times. Dr. Daly noted that Plaintiff's wounds were healing, he was walking well, and could start resuming his normal activities. *Id.* at PageID.40–41. Plaintiff also began physical therapy.

---

[1] Deep vein thrombosis refers to a blood clot within an individual's "deep veins," usually within one of their legs. *See Deep Vein Thrombosis (DVT)*, MAYO CLINIC (June 11, 2022), https://www.mayoclinic.org/diseases-conditions/deep-vein-thrombosis/symptoms-causes/syc-20352557 [https://perma.cc/KD3U-GQGY].

*See* ECF No. 6-8 at PageID.729–30. In March 2019, Plaintiff was still feeling "sharp pain" within his left leg and hip. ECF No.6-3 at PageID.41. But, the following month, Plaintiff noted only "a little pain when getting out of the car" but was otherwise "feeling okay" and reported his pain was "slowly getting better." *Id.*

In May 2019, Dr. Daly reported that Plaintiff "ha[d] done great" and was "completely healed from his wounds." ECF No. 6-8 at PageID.634. Dr. Daly recommended Plaintiff take over-the-counter pain medication and use compression stockings daily to mitigate pain. *Id.* Plaintiff's physical therapists reported that he was "making progress with therapy" and completing exercises without complaints. *Id.* at PageID.633.

In June 2019, Plaintiff's physical therapist noted that, although he continued to complain of intermittent pain, he did not have the "best attendance" at therapy sessions and was not following his at-home exercise program. *Id.* at PageID.632. At appointments later that month, Plaintiff reported that his legs felt "good" on some days, but, on others, he experienced intermittent sharp pain. *Id.* at 629–32. Plaintiff's physical therapist reported that he was "making progress with therapy" and Plaintiff's doctors reported he "will likely have residual pain for the rest of his life." *Id.* at PageID.629–30.

In July 2019, Plaintiff visited Dr. Daly, complaining of numbness in his left leg which prevented him from walking. *Id* at PageID.624. Dr. Daly concluded that Plaintiff "probably" had nerve damage and recommended Plaintiff be seen by a neurologist. *Id.* Notably, Dr. Daly also reported his belief, at that time, that Plaintiff was "unable to perform work secondary to his disability." *Id.* Plaintiff's physical therapy assessments were mostly positive. Although Plaintiff exhibited some reduced sensation in his left thigh and reduced strength in his left hip, he displayed a normal gait, balance, and leg mobility. *See id.* at PageID.619–24.

Plaintiff's physical therapy assessments throughout August and September 2019 were also generally positive. Despite continued complaints of periodic pain and slow movement, Plaintiff's physical therapists noted he was "[doing] much better . . . with the exercises" and was making good progress. *Id.* at PageID.609–14.

In October 2019, neurologist Sylvia Anagnos examined Plaintiff and reported decreased sensation in his left thigh and lower leg, but also noted his gait, muscle tone, and strength were normal, and he had no major nerve injuries. *Id.* at PageID.605–06. Similarly, physical therapy reports from October 2019 noted both Plaintiff's continued complaints of pain and Plaintiff's continued progress. *See id.* at PageID.601–605.

Throughout November and December 2019, Plaintiff could use a rail to climb stairs, and could walk one block without pain, although he limped and moved slowly. *See id.* at PageID.941–42. Plaintiff was discharged from physical therapy on December 19, 2019, because he was "not making progress with therapy," and was not completing his instructed at-home exercises. *Id.* at PageID.985–86.

In January 2020, Dr. Anagnos told Plaintiff that all examinations revealed normal muscle function, a normal gait, and in-tact nerves. *See* ECF No. 6-9 at PageID.1100–01. Dr. Anagnos described Plaintiff's pain and numbness as a "chronic problem" which has lasted for months despite physical therapy. *Id.* at PageID.1101. Plaintiff still complained of pain but declined Dr. Anagnos's referral to a pain clinic. *See id.* at PageID.1105.

Plaintiff returned to physical therapy in June 2020 because he was still complaining of pain, weakness, and stiffness in his left leg. *Id.* Specifically, Plaintiff complained of stiffness when he drove for 15–20 minutes or when standing after prolonged sitting. ECF No. 6-3 at PageID.43. When Dr. Daly examined Plaintiff in October 2020 for further complaints of pain, he concluded

that Plaintiff had no vascular, muscular, or skeletal issues, and accordingly referred Plaintiff to a pain clinic for further treatment. *See* ECF No. 6-9 at PageID.1120–21.

Plaintiff met with Dr. Samvid Dwivedi, a pain medicine specialist, in November 2020. *See* ECF No. 6-9 at PageID.1128–34. Dr. Dwivedi doubted Plaintiff was suffering from regional pain syndrome and noted, instead, that Plaintiff's pain was intermittent and had improved considerably. *Id.* at PageID.1133. Dr. Dwivedi offered Plaintiff a nerve block[2] but Plaintiff declined. *See id*; ECF No. 6-3 at PageID.71.

Plaintiff's medical record concludes with an entry in August 2021[3], describing Plaintiff's follow-up visit with Dr. Anagnos. *See* ECF No. 6-9 at PageID.1138. After the examination, Dr. Anagnos noted that Plaintiff had numbness and a reduced sensation in his left leg but otherwise had normal muscle function, coordination, walk, and gait. *See id.* at PageID.1138–42.

## B.  Procedural History

On October 4, 2019, Plaintiff applied for disability insurance benefits, alleging that his disability began on October 28, 2018—the day he was shot. ECF Nos. 6-6 at PageID.35; 12 at PageID.1179. But the Social Security Administration (SSA) denied Plaintiff's application in January 2020, concluding he was not "disabled" under relevant regulations because his condition was not "severe enough to keep [him] from working." ECF No. 6-5 at PageID.130. Plaintiff requested reconsideration, *id.* at PageID.141–44, but reconsideration was denied in November 2020. *Id.* at PageID.145–47. Plaintiff then requested a hearing before an administrative law judge

---

[2] A nerve block is an injection of medication close to a targeted nerve or nerve group; intended to provide the patient with temporary pain relief. *See Nerve Block*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/treatments/12090-nerve-blocks (last updated March 7, 2023) [https://perma.cc/24LS-B6UB].
[3] When asked, Plaintiff told the Administrative Law Judge that this nine-month gap in treatment was attributable to the COVID-19 pandemic and his physical therapists telling him "there was nothing else they could do for him." ECF No. 6-3 at PageID.40.

(ALJ). *See id.* at PageID.174, 177. In light of the COVID-19 pandemic, the hearing was held virtually on November 16, 2021 before ALJ David Read. *Id.* at PageID.192, 196; ECF No. 6-3 at PageID.35.

After the hearing and reviewing Plaintiff's medical record, the ALJ concluded that Plaintiff did not qualify as "disabled." *See generally* ECF No. 6-3 at PageID.35–47. The ALJ thoroughly explained the five-step sequence promulgated by the SSA to evaluate whether a person is disabled:

(1) The SSA considers the claimant's work activity. If the claimant is engaged in "substantial gainful activity,"[4] (SGA) they are not disabled.

(2) The SSA considers the medical severity of the claimant's impairments. If the claimant does not have a "severe medically determinable physical or mental impairment,"[5] they are not disabled.

(3) The SSA considers whether the claimant's severe impairment "meets or equals" the criteria of an impairment explicitly listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If not, the claimant is not disabled.

(4) The SSA considers the claimant's "residual functional capacity"[6] and "past relevant work."[7] If the claimant has the residual functional capacity to perform their past relevant work, they are not disabled.

---

[4] "'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). 'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575)." ECF No. 6-3 at PageID.36.

[5] "An impairment or combination of impairments is 'severe' . . . if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when . . . evidence establish[es] only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522, Social Security Rulings . . . 85-28 and 16-3p)." ECF No. 6-3 at PageID.36.

[6] "An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." ECF No. 6-3 at PageID.36.

[7] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and [qualify as] SGA[.]" ECF No. 6-3 at PageID.37 (citing 20 C.F.R. §§ 404.1560(b) and 404.1565).

> (5) The SSA considers whether the claimant's residual functional capacity, combined with their age, education, and work experience, allows them to adjust to other work. If so, the claimant is not disabled.

*See* 20 C.F.R. § 404.1520(4); *see also* ECF No. 6-3 at PageID.36–37.

At step one, the ALJ concluded that Plaintiff had *not* engaged in SGA since being shot. ECF No. 6-3 at PageID.37. Although, Plaintiff worked as a teacher's aide, he testified that he was "let go" after two months because his impairments prevented him from fulfilling his duties. *Id*. And although Plaintiff then worked periodically as a substitute teacher, he was not paid enough for this work to classify as SGA. *Id.*

At step two, the ALJ concluded that Plaintiff's gunshot wound and subsequent complications were sufficiently and determinably medically severe. *Id.* at PageID.38.

Plaintiff's claim failed at step three. After considering the "signs, symptoms, and laboratory findings of [Plaintiff's] severe impairments," the ALJ concluded "they do not meet or medically equal in severity or duration the criteria" of any relevant regulatory appendix listing. *Id.* Notably, the ALJ found that Plaintiff's impairment did not meet or equal Listing 1.18—concerning "abnormality of major joint(s) in any extremity"—because Plaintiff did not have a "documented medical need for a walker, bilateral canes, or bilateral crutches, or a wheeled and seated mobility device involving the use of both hands" or any other documentation required by the listing. *Id.* The AJL noted that there "is no medical documentation" that Plaintiff needed an assistive device requiring both his hands and, although he "used a walker for a short period of time" after being discharged from the hospital, the medical record indicated he generally did not need assistance standing or walking and, when he did need assistance, he primarily relied on a non-bilateral cane.[8] *Id.* at PageID.39.

---

[8] Plaintiff testified that he used a walker until 2020. ECF No. 6-3 at PageID.71. But the ALJ found this testimony was inconsistent with Plaintiff's objective medical records. *Id.* at PageID.44.

Although he could have stopped there, the ALJ proceeded to step four and concluded—based on Plaintiff's testimony, the medical record, and opinion evidence—that Plaintiff "has the residual functional capacity to perform light work" with the assistance of a cane. *Id.* The ALJ noted Plaintiff can "occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can never work at unprotected heights." *Id.* The ALJ noted Plaintiff's testimony that he was "unable to work" was outweighed by objective medical evidence which showed his improvement. *Id.* at PageID.39–44 (noting Plaintiff's testimony was "not fully consistent" with the objective medical record). The ALJ also noted Plaintiff's testimony was inconsistent with the expert testimony of Dr. Katerine Alizo and Myung Ho Hahn, who both opined that Plaintiff could perform light work.[9] *Id.* at PageID.44. The ALJ next considered Dr. Daly's opinions that (1) Plaintiff's injury "*may* [prevent] him from being able to fully use his left leg," (2) that Plaintiff "*may* require disability[,]" and (3) that Plaintiff "is not able to work,"[10] ECF Nos. 6-8 at PageID.945 (emphasis added), 6-9 at PageID.1143. The ALJ found these opinions only *partially* persuasive because the objective medical record supported some restrictions on Plaintiff's work, but nothing more severe than limiting him to light work with the assistance of a cane. ECF No. 6-3 at PageID.44–45.

The ALJ next concluded that, as supported by the testimony of vocational expert (VE) Amy Shelton, Plaintiff's residual functional capacity did not allow him to perform his past relevant work as a mail clerk, mail truck driver, and child care attendant. *Id.* at PageID.45.

---

[9] The ALJ found these expert opinions partially persuasive, noting that the medical record supported Plaintiff's light work *with the assistance of a cane*. ECF No. 6-3 at PageID.44.

[10] Notably, this opinion was expressly based on the type of work Plaintiff was engaged in *at the time*. ECF No. 6-9 at PageID.1143 (Noting Plaintiff is unable to work specifically "due to the nature and the type of work that he does"). In this way, Dr. Daly's opinion and the ALJ's conclusions are aligned. As explained above, the ALJ *also* concluded that Plaintiff's functional residual capacity prevented his relevant past work, and only allowed him to perform *light work* with the assistance of a cane. ECF No. 6-3 at PageID.45.

At the fifth and final step, the ALJ concluded that Plaintiff's residual functional capacity, age, high school education, and prior work experience allowed him to work jobs "that exist in significant numbers in the national economy." *Id.* at PageID.46. Specifically the ALJ credited the VE's testimony that there were approximately 30,000 "light work" jobs Plaintiff could perform, even when needing to use a cane. *See id.*

In sum, because Plaintiff's severe medical impairment did not "meet or equal" a specific regulatory listing, and because Plaintiff's residual functional capacity allowed him to perform a significant number of light-work jobs with the assistance of a cane, the ALJ determined Plaintiff was not disabled and was not entitled to social security benefits. *Id.* at PqageID.47.

After the SSA Appeals Council denied Plaintiff's appeal of the ALJ's decision, *id.* at PageID.21, Plaintiff filed a federal Complaint with this Court on December 7, 2022. ECF No. 1; *see also* 42 U.S.C. §405(g) (allowing final decisions of the SSA to be challenged in a civil action filed in federal court). Plaintiff filed a Motion for Summary Judgment on April 13, 2023 and Defendant—the Commissioner of Social Security—followed suit two months later. ECF Nos. 10; 12. Plaintiff asserted three arguments in his Motion. First, Plaintiff argued the ALJ erred in calculating his residual functional capacity because, in Plaintiff's view, his need for a cane *per se* prevented him from performing "light work." ECF No. 10 at pageID.1162–65. Second, Plaintiff argued the ALJ erred in finding Dr. Daly's opinions only partially persuasive. *Id.* at PageID.1165–68. Third, Plaintiff argued the ALJ erred in concluding that Plaintiff's impairment did not meet or equal Listing 1.18 because Plaintiff testified that he needed a walker throughout 2020. *Id.* at PageID.1168–72.

On November 2, 2023, Magistrate Judge Patricia T. Morris filed a report (R&R) which recommended this Court deny Plaintiff's Motion for Summary Judgment; grant Defendant's

Motion for Summary Judgment; and affirm the ALJ's decision that Plaintiff is not "disabled" under the Social Security Act. ECF No. 14.

Judge Morris rejected Plaintiff's first argument because this Court has repeatedly rejected the notion that using a cane *per se* precludes light work. *Id.* at PageID.1232 (citing *Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (collecting cases)); PageID.1234. Judge Morris explained that the ALJ correctly consulted with a VE and considered the totality of the facts in the record when calculating Plaintiff's residual functional capacity, despite his need for a cane. *Id*. at PageID.1232–33. Indeed, as Judge Morris noted, the VE testified—in response to hypotheticals posed by the ALJ—that a person who used a cane could still perform light work in thousands of jobs within the national economy. *See id.* (citing ECF No. 6-3 at PageID.94).

Rejecting Plaintiff's second argument, Judge Morris concluded the ALJ properly weighed Dr. Daly's opinions that Plaintiff "may require disability," ECF No. 6-8 at PageID.945, and was "not able to work," ECF No. 6-9 at PageID.1143, because the SSA's regulations "specifically caution that opinions which state an individual 'is disabled' or 'unable to work' should not be given special significance as they intrude upon issues which are reserved to the Commissioner." ECF No. 14 at PageID.1236 (citing *Carreon v. Massanari*, 81 F. App'x 571, 574 (6th Cir. 2002)). And Judge Morris concluded that the ALJ's findings, contrary to Dr. Daly's opinions, were supported by the by the evidentiary record. *Id.* (noting no documentation that Plaintiff needed an ambulatory device, and that Plaintiff often experienced low levels of pain, could stretch without issue, prepared his own meals, walked, and could regularly lift ten-to-fifteen pounds).

Judge Morris also rejected Plaintiff's third argument and concluded that the ALJ properly found Plaintiff's severe impairment did not meet the criteria of Listing 1.18. As the ALJ and Judge Morris noted, Listing 1.18 requires "medical documentation of at least one of the following:

> (1) [a] documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and sealed mobility device involving the use of both hands; or
> (2) [a]n inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assisted device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or
> (3) An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.18 (internal cross-references omitted); *see also* ECF Nos. 6-3 at PageID.38; 14 at PageID.1238. But here, Plaintiff had no requisite medical documentation. ECF No. 6-3 at PageID.39. Plaintiff argued, despite his lack of documentation, that he met Listing 1.18 because he, in fact, used a walker for two years. *See* ECF No. 10 at PageID.1168–72. But Judge Morris rejected this argument, noting that the ALJ found this testimony inconsistent with the medical record, which contained numerous reports that Plaintiff could walk, stand, and balance normally without assistance. ECF No. 14 at PageID.1240 (citing ECF No. 6-3 at PageID.44).

Plaintiff filed three objections to Judge Morris's R&R on November 13, 2023. ECF No. 15. Defendant responded four days later. ECF No. 16.

## II.

Under Civil Rule 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). The parties must state any objections with specificity within a reasonable time. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). Any objection which fails to identify specific portions of the R&R will not be reviewed. *See Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection

to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review[.]"). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before," is not a proper objection. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Further, parties cannot "raise at the district court stage new arguments or issues that were not presented" before the R&R was issued. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

If a party makes a timely and proper objection, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). When reviewing a report and recommendation *de novo*, this Court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, this Court is free to accept, reject, or modify the Magistrate Judge's findings or recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, No. 1:20-CV-11290, 2021 WL 4145771, at *2 (E.D. Mich. Sept. 13, 2021).

## III.

Plaintiff raises three objections to the R&R. *See* ECF No. 15 at PageID.1245–48 Each will be addressed in turn.

### A.

Plaintiff's first objection concerns Judge Morris's conclusion that the ALJ properly calculated Plaintiff's residual functional capacity to perform light work with the assistance of a cane. ECF No. 15 at PageID.1245–46. Plaintiff argues that his "need to sit with [his] left leg extended to waist height" precludes both light work and all work." *Id.* Defendant argues Plaintiff's first objection is improper because the argument was not raised before the R&R was issued and

because it does not object to a specific portion of the R&R. ECF No. 16 at PageID. 1251–53. Defendant also argues that, even if the objection is proper, it should be overruled on the merits. *Id.*

Plaintiff's objection is proper. Although Plaintiff did not squarely assert this argument in his Motion for Summary Judgment, ECF No. 10, he did so in his Response to Defendant's Motion for Summary Judgment, ECF No. 13 at PageID.1202 ("The other significant impairment to light or sedentary work is plaintiff's need to elevate his left leg when sitting about hip high. This functional limitation precludes all employment [and] was not considered [by] the ALJ[.]"). And Judge Morris never considered this argument when issuing her R&R, so Plaintiff could not have identified a specific portion of the R&R to object to. *See generally* ECF No. 14.

Even though Plaintiff's objection is proper, it will be overruled. True, at the hearing, Plaintiff testified that he spends most of the day on the couch, with his left leg "propped up" and that he experiences intermittent pain when he sits for 15-20 minutes without elevating his left leg, such as when he drives. ECF No. 6-3 at PageID.69, 77. 80. But the ALJ expressly considered this testimony when calculating Plaintiff's residual functional capacity, and found it inconsistent with the objective medical record which revealed Plaintiff had normal muscle tone, normal balance, and normal sensations in his legs. *Id.* at PageID.44–45. And although the VE testified, in response to a hypothetical posed by Plaintiff's attorney, that a person's need to elevate their leg to waist level while doing their job would be "work preclusive," ECF No. 6-8 at PageID.92, no physician or medical professional ever suggested, let alone instructed, that *Plaintiff* needed to elevate his left leg while working, let alone for his entire shift. *See generally* ECF Nos. 6-8; 6-9.[11] On the contrary,

---

[11] The portions of the medical record Plaintiff cites to support his argument that he must elevate his left leg while sitting provide no support. *See* ECF Nos. 13 at PageID.1202 (citing VE's *hypothetical* hearing testimony); 15 at PageID.1246. Plaintiff first cites a July 28, 2019 lab report which noted thrombosis in Plaintiff's leg, but did not discuss treatment whatsoever, let alone Plaintiff's need to elevate his leg, specifically. *See* ECF No. 6-8 at PageID.877. Plaintiff also cites Dr. Ryan Borgart's November 5, 2018 progress note. ECF No. 6-8 at PageID.311. But this note

the record suggests Plaintiff's physical therapists advised against Plaintiff sitting for extended periods of time, even with his leg propped up, instructing him to move and stretch his leg frequently. *See* ECF No.6-8 at PageID.615.

In sum, although the VE testified that elevating one's leg during the workday would be "work preclusive," and Plaintiff believes he needs to elevate his left leg, the ALJ's conclusion was supported by substantial evidence in the medical record, which does not corroborate Plaintiff's belief. Plaintiff's first objection will be overruled. *See Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 170 (6th Cir. 2016) (rejecting claimant's argument that ALJ failed to consider need to elevate legs in calculating residual functional capacity because, despite claimant's testimony, "no medical expert opined that [the claimant] would need to elevate her feet to waist level during the workday or even every day"); *Lyon v. Saul*, No. 5:20-CV-00121-LLK, 2021 WL 2403151, at *2 (W.D. Ky. June 11, 2021) (same); *see also Campbell v. Com'r of Soc. Sec.*, No. 01-CV-72045-DT, 2002 WL 31107503, at *4 (E.D. Mich. Aug. 15, 2002) (rejecting argument that ALJ failed to consider need to elevate leg because, without evidence of this need in the record, "[t]he ALJ is not obligated to incorporate unsubstantiated complaints into his hypothetical questions.").

## B.

Next, Plaintiff objects, without citing any portion of the R&R,[12] that "[t]he ALJ did not give Dr. Brian J. Daly['s] opinions the weight to which they are entitled." ECF No. 15 at PageID.1247 (emphasis omitted). But Plaintiff already made this argument and Judge Morris already rejected it. *Compare* ECF Nos. 10 at PageID.1165–68; 13 at PageID.1202–03 (arguing the

---

reflects only that Plaintiff, while still in the hospital recovering from being shot one week earlier, "has kept" his leg elevated while sleeping and sitting in his hospital room. *Id.*

[12] Indeed, Plaintiff only cites the R&R once within his three objections, and does so only to note his agreement with Judge Morris's conclusion that using a cane does not *per se* preclude light work. ECF No. 15 at PageID.1245–46 (citing ECF No. 14 at PageID.1232–33).

- 14 -

ALJ should have given more weight to Dr. Daly's opinion that Plaintiff may be unable to fully use his left leg and may require disability, and arguing the ALJ did not provide a coherent explanation for finding Dr. Daly's opinion only partially persuasive) *with* ECF No. 15 at PageID.1247 (same). So, Plaintiff's second objection will be overruled. *See Morris v. Washington*, No. 21-CV-10627, 2022 WL 4534954, at *1 (E.D. Mich. Sept. 28, 2022) (overruling a repetitive objection as "without merit"); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than . . . simply summarize[] what has been presented before, is not an 'objection' as that term is used in this context.").

## C.

Finally, Plaintiff objects that the ALJ erred in concluding Plaintiff's severe impairment did not meet or equal the criteria of Listing 1.18. ECF No. 15 at PageID.1248. But, like his second objection, Plaintiff' third objection does nothing more than repeat an argument already rejected by Judge Morris. *Compare* ECF Nos. 10 at PageID.1168–72; 13 at PageID.1203–04 (arguing Plaintiff met Listing 1.18 because he testified that he needed to use a walker from 2018 through 2020, conceding that "[t]he medical records are silent on the subject") *with* ECF No. 15 at PageID.1248 (arguing Plaintiff met Listing 1.18 because he testified that he used a walker for two years, conceding "[t]he medical records are sparse about the use of a walker[.]"). So, Plaintiff's third objection will also be overruled. *Morris*, 2022 WL 4534954, at *1; *Aldrich*, 327 F. Supp. 2d at 747.

In sum, Plaintiff's three objections will be overruled, Judge Morris's R&R will be adopted, Plaintiff's Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgement will be granted, and Plaintiff's Complaint will be dismissed with prejudice. Although this Opinion is not meant to minimize or undermine the severity of Plaintiff's injury and

subsequent complications, the ALJ's decision denying Plaintiff's petition for disability benefits was supported by substantial evidence in the medical record.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Objections, ECF No. 15, are **OVERRULED**.

Further, it is **ORDERED** that the Magistrate Judge's Report and Recommendation, ECF No. 14, is **ADOPTED**.

Further, it is **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 10, is **DENIED**.

Further, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 12, is **GRANTED**.

Further, it is **ORDERED** that the Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

Dated: March 13, 2024          s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge